# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ISAR KIANI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 6:22-cv-6427 |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| | ) | **JURY TRIAL DEMAND** |
| ST. JOHN FISHER UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## NATURE OF THE ACTION

This is an action alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. ("ADA"), and the New York State Division of Human Rights Law, N.Y. Exec. L. §§ 290, et seq. ("NYSHRL") to correct unlawful discriminatory and retaliatory practices on the basis of disability and to provide appropriate relief to Plaintiff Isar Kiani ("Plaintiff" and/or "Isar Kiani"), an employee who was adversely affected by such practices. As alleged with greater particularity herein-below, Plaintiff alleges that Defendant St. John Fisher University ("Defendant" or "Employer") discriminated against Plaintiff Isar Kiani, who is a qualified individual with a disability, when it failed to provide reasonable accommodations for Plaintiff's qualified disability and when it subjected Plaintiff to materially adverse employment actions, including loss of employment and retaliation, while employed by Defendant.

1

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to Section 794(a); 42 U.S.C. Sec. 3613; 28 U.S.C. Sec. 1331; and 28 U.S.C. Sec. 1343.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of New York, Rochester Division.

3.      Venue of this action in the United States District Court for the Western District of New York is proper pursuant to 28 U.S.C. § 1391(b) because the Plaintiff was employed and subjected to employment discrimination and retaliation in the Western District, and a substantial part of the events giving rise to these claims, occurred in said district.

4.      All conditions precedent to the filing of this lawsuit have been met. Plaintiff timely filed a charge of Disability Discrimination and Retaliation with the New York State Division of Human Rights, Case Number 10214608 and the United States Equal Employment Opportunity Commission ("EEOC"), Federal Charge Number 16GC200694.

5.      Following the NYSDHR's investigation, Plaintiff duly requested and received from the EEOC a "Notice of Right To Sue" letter dated July 11, 2022. (Attached as Exhibit "**A**").

6.      Plaintiff files the instant Complaint within 90 days from her receipt of the "Right To Sue" letter she received from the EEOC.

## **PARTIES**

7.      Plaintiff, Isar Kiani, is an individual and resident of Monroe County, New York, who was employed at times relevant hereto by Defendant St. John Fisher University as a Professor of Marketing in the School of Business.

2

8.      Defendant, St. John Fisher University is a Private University located in Pittsford, New York, in the County of Monroe and which has continuously had at least 15 employees.

9.      Defendant St. John Fisher University conducts business in the State of New York, within the jurisdiction of the Western District of New York, Rochester Division.

10.     Defendant St. John Fisher University receives federal funding in the form of federal grants.

11.     At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

## STATEMENT OF CLAIMS

12.     More than thirty days prior to the institution of this lawsuit, Plaintiff filed a charge with the NYSDHR and EEOC alleging disability discrimination against Defendant Employer.  All conditions precedent to the institution of this lawsuit have been fulfilled.

13.     Plaintiff suffered from a condition known as Fibromyalgia, symptoms of which affected several major life activities including the ability, at times, to work, and to sleep, due to several symptoms, including severe muscle pain, cognitive problems such as forgetfulness, severe fatigue, malaise, muscle tenderness and other symptoms.

14.     Plaintiff first communicated to Defendant the nature of her health condition during the Spring 2019 semester.

15.     Colleagues and administrators were made aware of the condition that was initially suspected as MS or Lupus. During Summer 2019, further examinations revealed the condition as Fibromyalgia. The challenges of the condition resulted in Plaintiff missing several meetings and events due to extreme physical pain and afore-referenced cognitive issues.

3

16.     On November 15, 2019, in a meeting attended by Department Chair, Nicola

Leifker, of the Department of Management and Marketing, School of Business and Dr. Carol

Wittmeyer, Interim Dean, School of Business, Mr. Leifker criticized Plaintiff for being 1 to 2

minutes late to class on two occasions.

17.     At said meeting, Dr. Kiani reminded Leifker of her condition, in response to

which Leifker rose in anger and exclaimed: "How should I know anything about this? I'm not an

expert in medicine." He immediately left the meeting and slammed the door on his way out. He

never reached out to follow up on Plaintiff's condition or to reconsider his negative review of Dr.

Kiani's performance, based upon what would have been appropriate consideration of Dr. Kiani's

limitations proximately caused by her Fibromyalgia and related physical and health limitations.

18.     In a meeting on January 9, 2020, with Dr. Wittmeyer to address the negative

review that Dr. Kiani had unfairly received, the two discussed the specific condition that had

been plaguing Plaintiff. Plaintiff went so far as to point out the medication that had been

prescribed to her by her physician due to the Fibromyalgia and to treat stress that she was

experiencing at work.

19.     In addition to the Fibromyalgia, Plaintiff also suffers from moderate hearing loss,

which she was afflicted with at all relevant times hereto, and about which she made the

University aware, and which also affects major life activities, including the ability to hear

students while engaging in in-person teaching, at times.

20.     At the January 9, 2020, meeting with Dr. Wittmeyer, Plaintiff explicitly requested

an accommodation related to her teaching duties due to her hearing disability; to wit; that she be

permitted to teach remotely since technology for remote teaching allowed her to hear students

better.

21.     Plaintiff's accommodation request was initially not supported by Interim Dean, Dr. Carol Wittmeyer, who insisted that there was no substitute for face-to-face. She did, however, eventually accept the recommendation by the Human Resources Department to grant the accommodation, after which Plaintiff was given permission to teach her classes remotely.

22.     Dr. Carol Wittmeyer expressed her displeasure at the decision to grant Plaintiff said accommodation, and repeatedly humiliated Plaintiff by reminding Plaintiff about the importance of teaching face-to-face and of the need to be physically present at meetings.

23.     On February 6, 2021, after an approximately 8-month delay, the Defendant gave Plaintiff, who was an untenured Assistant Professor - a negative annual review.

24.     The Defendant's negative review of Plaintiff's performance was undeserved and was in fact tantamount to retaliation for Plaintiff's previous lawful requests for accommodations of her qualified disabilities.

25.      The Performance Assessment completely ignored BOTH Plaintiff's hearing-loss disability as well as her Fibromyalgia, and in fact faulted Plaintiff for phenomena caused by limitations related to her hearing.

26.     The Performance Assessment criticized Dr. Kiani for not providing instantaneous responses to student-questions, as well as for her occasional physical absence from the University, despite having received approval from the University for an accommodation of teaching remotely. Defendant gave Plaintiff a negative performance evaluation for something it had approved and authorized as an accommodation for Dr. Kiani's hearing-loss.

27.     Nicola Leifker's punitive evaluation contained 52 negative assessments, 2 neutral and 0 positive assessments of Plaintiff's performance.

28.     By subjecting Plaintiff to a negative Performance Assessment because Dr. Kiani had requested and received an accommodation for her disability, the University was not only retaliating against Plaintiff, but discriminating against her on the basis of her qualified disabilities.

29.     On February 16, 2021, Plaintiff challenged Nicola Leifker's flawed and retaliatory Performance Assessment of her in a letter.

30.     Also on February 16, 2021, Plaintiff contacted Dr. Carol Wittmeyer to request a re-evaluation and explained the reasons she was entitled to be re-evaluated.

31.     On March 18, 2021, Plaintiff met with Dr. Carol Wittmeyer and learned that Wittmeyer had been preparing a list that contained each occasion Plaintiff had been late, even by a single minute, as well as all disagreements Plaintiff had had with students, regardless of whether Plaintiff was justified.

32.     Other non-disabled but otherwise similarly situated faculty members were not subject to the afore-referenced hyper-scrutiny to which Defendant subjected Plaintiff.

33.      Defendant St. John Fisher University singled Plaintiff out in discriminatory fashion in a way that was not standard as to other faculty in the School of Business.

34.     In said meeting with Dr. Carol Wittmeyer, Wittmeyer told Plaintiff that in addition to the list she had prepared showing each and every occasion Plaintiff was tardy, she was also preparing a similar document that she intended to hold against Plaintiff during her subsequent Performance Evaluation. Plaintiff found this to be very threatening.

35.     On March 31, 2021, Dr. Carol Wittmeyer wrote a negative assessment of Plaintiff's performance without any reference to of Dr. Kiani's health conditions and related

limitations, even though said health conditions and physical limitations were relevant to, and contributed to some of the shortcomings cited in the March Assessment.

36.     The March Assessment contained false information. For example, Carol Wittmeyer claimed in said negative Assessment that Plaintiff's vehicle was cited by campus police for illegal parking and then used that as evidence probative of Plaintiff's late arrival. The problem with said allegation is that <u>the vehicle in question did not belong to Plaintiff.</u>

37.     When Plaintiff duly requested that information to be corrected, Carol Wittmeyer refused to make the correction. Instead, Wittmeyer maintained that her negative letter based on false information would remain in Dr. Kiani's Personnel File along with the negative Assessment that had previously been prepared by Nicola Leifker.

38.     On April 26, 2021, Plaintiff filed a grievance for the discriminatory and unfair assessments that she had received.

39.     Notably, the negative Assessments of Plaintiff's performance had used metrics that were not approved by the Research and Publications committee and explicitly ignored the direct comment made by the Chair of that committee, who had confirmed the validity and sufficiency of Plaintiff's research output.

40.     As part of the Grievance process, Plaintiff provided documentation based on existing and approved policies at the School of Business.

41.     Nicola Leifker and Carol Wittmeyer were each informed of Plaintiff's Grievance.

42.     During the Spring 2021 semester, Defendant forced Dr. Kiani to change her teaching schedule from a conventional 2-day teaching schedule to a 3-day schedule which required Plaintiff to be physically present at the University as compared to the 2-day schedule she was assigned.

43.     Defendant's alteration of Plaintiff's schedule was not only unilateral on the part of the University but was done in knowing derogation of Plaintiff's accommodations for both her hearing loss and her Fibromyalgia. Remote teaching accommodated Plaintiff's needs with respect to her hearing loss, for the reasons referenced above, and remote teaching limited Plaintiff's physical movement, thus limiting pain and suffering from her Fibromyalgia symptoms such as muscle aches.

44.     Plaintiff reached out to Dr. David Kunsch, a senior faculty member who advised Plaintiff that it was typical for faculty in the School of Business to offer quizzes on the third day of a three-day teaching schedule, and further, that students could take said quizzes in- person or remotely.

45.     In June 2021, Plaintiff met via "Zoom" video feed with Nicola Leifker for her annual Performance Evaluation before which, Plaintiff requested – as an accommodation for her hearing loss - that Mr. Leifker record the Zoom meeting so that she could listen to his feedback more carefully and at higher volume, as needed, due to her Hearing Impairment disability, to which he simply responded: "No".

46.     During the month of August 2021, Plaintiff contacted Dr. Carol Wittmeyer to ask for an accommodation related to her inability to comprehend speech when people wear masks. After several back-and-forth communications, Human Resources offered that Plaintiff teach remotely so she could see student's faces, and better be able to read lips if necessary.

47.     Defendant offered Plaintiff to teach remotely, but on the condition that she conduct her remote classes from inside her office at the School of Business, which required increased physical presence at the University and which offer was in complete derogation of Plaintiff's need to be at home to accommodate her Fibromyalgia.

48.     Non-disabled faculty members in the School of Business are not, upon information and belief, required to teach remote classes from their University offices.

49.     In addition to discriminatorily ignoring Plaintiff's Fibromyalgia and related muscle weakness and pain by requiring that she conduct remote classes from her office, Defendant was also motivated by retaliatory animus because Plaintiff had sought accommodations for her disabilities and because she had complained about disability discrimination in her Grievance to the University.

50.     Rather than to teach classes remotely from her office, and given that she had an impending evaluation, Dr. Kiani decided to ignore her own physical limitations and to power through in-person teaching face to face classes, despite a severe physical cost and anguish.

51.     During September and of October 2021, Carol Wittmeyer paid several uninvited visits to Plaintiff's classroom to check on her attendance and to scrutinize her in any way she could to find faults with her performance. Said scrutiny was, in and of itself, tantamount to discriminatory and retaliatory harassment to Plaintiff, who found Dr. Wittmeyer's unusual focus on her to be most unwelcome.

52.     Other non-disabled faculty members in the School of Business were not similarly hounded by Dr. Wittmeyer.

53.     Indeed, during the same time frame, Plaintiff is personally aware of other non-disabled faculty members who missed class sessions or who were tardy, and the University never questioned or scrutinized said faculty members, nor did the University punish said Faculty Members.

54.     However, during a Friday class session, Carol Wittmeyer became visibly and audibly angered at Plaintiff because - although Plaintiff had duly participated in her class session from her office, students were allowed to take their quiz remotely.

55.     Other non-disabled School of Business Faculty had already taken the approach of offering remote class-quizzes on the third day of a 3-day teaching schedule, said Faculty were never castigated, questioned or disciplined.

56.     On October 15, 2021, Plaintiff submitted her documents for a promotion application to become a member of the senior faculty, to Carol Wittmeyer. In the application, Plaintiff once again referred to and invoked her conditions, limitations and her disabilities so that her physical restrictions and limitations would be considered in the assessment.

57.     On October 26, 2021, Plaintiff received two positive votes, supporting Plaintiff's promotion, and 3 negative votes from the Senior faculty on her application. The negative votes included Nicola Leifker, who had previously dismissed Plaintiff's condition as well as Jason Berman.

58.     On October 27, 2021, coincidentally, Plaintiff met Jason Berman in the School of Business parking lot as she headed to class when he told Plaintiff that his vote was negative due to a request by Carol Wittmeyer and that he would change his vote if Carol Wittmeyer gave him permission to do so.

59.     On October 28, 2021, Plaintiff met with Jason Berman and Carol Wittmeyer in the latter's office. In said meeting, Carol Wittmeyer wasted no time attacking Plaintiff for the way she allowed her Friday classes to be convened remotely. When Plaintiff pointed out the unfairness of her criticism and of the fact that this practice of remote quizzes is already followed

by other faculty on the third day of a three-day teaching schedule, Wittmeyer's response was to the effect of: "Now you're trying to throw other people under the bus".

60.    Wittmeyer did not show any interest in learning about how another faculty member had advised her to have a remote quiz day, or to follow up with other faculty.

61.    When Carol Wittmeyer learned that Plaintiff's teaching schedule was soon going to revert to a conventional 2-day teaching schedule, she attacked Dr. Kiani by saying: "Who gave you permission to teach 2 days?".

62.    During said meeting, Wittmeyer also attacked the structure of Plaintiff's teaching with statements such as "Why do you have to use case studies in your classes?" despite that that is a common practice in business schools both at the University, and at Universities worldwide, and one that is followed by non-disabled faculty at the school of business, who are not similarly punished or questioned for engaging in said practice.

63.    Plaintiff once again reminded Wittmeyer of her disabilities, and related symptoms as a basis for preferring remote teaching, with no reaction by Wittmeyer, other than disdainful skeptical contempt. By the conclusion of the meeting, Plaintiff was left in literal tears and unable to control herself from incessantly crying. Notwithstanding, Jason Berman and Carol Wittmeyer left the meeting, seemingly without any compassion toward Plaintiff.

64.    On November 3, 2021, Plaintiff was called into the Human Resources office as a result of a complaint that had been filed against Plaintiff, ostensibly related to her employment. Plaintiff met with Valerie Benjamin, Assistant Vice President for Human Resources, who informed Plaintiff that there was an investigation that had been opened concerning Plaintiff.

65.    On November 15, 2021, Carol Wittmeyer wrote a negative evaluation of Plaintiff's performance, repeating the same criticisms that she had used over the course of the year. She included the false parking information that Plaintiff had previously refuted, and completely disregarded Plaintiff's health and disabilities, as she criticized Plaintiff's attendance at her office and a handful of 1–2-minute delays.

66.    Wittmeyer once again used metrics for the performance evaluation that were not approved and adopted at Defendant's School of Business, yet with Defendant's approval and knowing ratification.

67.    When Plaintiff consulted with other colleagues that were being evaluated at the same level, she learned that these same metrics used to condemn her performance, which metrics created a higher standard, she learned that those same metrics were NOT used to assess the performance of said other Faculty members but were discriminatorily used to rate Plaintiff's performance.

68.    Given Plaintiff's research portfolio, she was, at the time, the faculty member with the most extended prospective timeline to maintain the "SA" ("Scholarly Academic") qualification; yet without any basis or reason, Carol Wittmeyer predicted in her Performance Assessment of Plaintiff that Plaintiff was somehow "unlikely to maintain this status". This negative assessment was not similarly used against any of Plaintiff's non-disabled colleagues despite that most were set to lose their "SA" status before Plaintiff.

69.    Wittmeyer also disregarded Plaintiff's other achievements related to her extensive research and publication qualifications.

70.    On November 17, 2021, Plaintiff met again with Valerie Benjamin and Carol Wittmeyer during which, Plaintiff was informed that after a detailed investigation concerning an

allegation that Plaintiff had improperly accessed confidential information related to another teacher's evaluation, the University had completely exonerated and absolved Plaintiff of any wrongdoing. It turned out to be a false allegation. Yet, during the very same meeting, Wittmeyer gave Plaintiff a stern verbal warning to the effect of: "You understand that we cannot have this happen again, right?".

71.     On November 19, 2021, Carol Wittmeyer sent out an email close to midnight to ask if Dr. Kiani had held her classes according to the University's policy that had been announced only two days prior. At least two other colleagues that Plaintiff was in contact with did not receive any such email from Wittmeyer or any other administrator.

72.     Plaintiff responded to Carol Wittmeyer's email on November 22, 2021 and reminded her that she was indeed following the schedule that was announced to students and that was consistent with the syllabus that was shared with the Department Chair, Nicola Leifker, at the beginning of the semester.

73.     At the time, Plaintiff found Wittmeyer's e-mail of November 22nd to be unwelcome harassment and designed to pressure Plaintiff to make changes to her course schedule that had already been communicated to students. It is well understood that sudden changes to student-schedules that are not communicated to students well in advance of the start-date tends to negatively affect a professor's teaching evaluations from students. The pressure from Carol Wittmeyer to pressure Plaintiff into making changes to her schedule felt intimidating and a means to ensure that her teaching evaluations were adversely affected.

74.     On December 2, 2021, Carol Wittmeyer replied to Plaintiff's November 22, 2021, email and accused Plaintiff of violating University policy for physical presence and holding

classes in person, while disregarding Plaintiff's previous explanation that Plaintiff's course is to follow the schedule clearly communicated to students.

75.      Plaintiff filed her Complaint with the NYSDHR on December 6, 2021.

**Retaliation**:

76.       During the pendency of the NYSDHR Investigation, the University maintained that the outcome of Dr. Kiani's Rank and Tenure decision, which would effectively determine the future of her employment, was not yet determined. However, the School of Business administrators, Dr. Leifker and Dr. Wittmeyer, the Provost Dr. Railey, and University President, Dr. Rooney, worked effectively together to ensure that Dr. Kiani's dossier remained polluted with negative evaluations such that a promotion to tenured faculty was a foregone conclusion.

77.       Defendant went so far as to pressure Dr. Kiani to withdraw her request for reasonable accommodations, despite that said requests were recommended by Plaintiff's healthcare provider.

78.      Provost Dr. Railey refused to remove from Plaintiff's Personnel File references to negative allegations that were made by Dr. Leifker of and concerning Plaintiff, despite that the removal of said allegations was suggested and urged by the Grievance Committee following Plaintiff's Grievance.

79.      Following the Grievance decision, the University only removed accusations against Dr. Kiani that were made by Dr. Leifker. Yet those same accusations were repeated in Dr. Wittmeyer's letter which remained in Plaintiff's Personnel file.

80.      On May 2, 2022, the Rank and Tenure Committee rendered its decision based on documents that were submitted, including Dr. Wittmeyer's letter, to deny Dr. Kiani's Rank and Tenure application.

81.     The committee's request was confirmed and approved by the Provost Dr. Railey and was communicated to Dr. Kiani on May 20, 2022.

82.     This decision was also approved by University President, Dr. Rooney and resulted in the decision to not renew Dr. Kiani's contract beyond the 2022-2023 academic year.

83.     Despite numerous communications with Dr. Rooney, while he acknowledged that the problematic content was included in Plaintiff's Dossier, he refused to provide any solution that would neutralize said unfair content, and which might have led to a fair outcome. (The granting of Tenure and contract renewal).

84.     In August of 2022, Dr. Kiani provided a letter to Defendant from her healthcare provider, in which said Healthcare Provider requested that Defendant accommodate Plaintiff by allowing her to teach remotely during the Fall 2022 semester.

85.     The foregoing request was denied and the Human Resources Director, Valerie Benjamin, went so far as to actually suggest that the request for accommodation in and of itself was somehow evidence that Plaintiff was "unfit" to return to work in any capacity.

86.     This foregoing assessment was followed by a series of phone calls where Dr. Kiani was threatened that unless she withdrew her request for accommodation, she would be terminated from her job.

87.     Dr. Kiani provided to the University additional documentation from her healthcare provider to further substantiate her previous accommodation request to work remotely, yet Defendant failed utterly to accommodate Plaintiff or even to engage in the Required Interactive Process. (See May 24, 2022, Letter from Rochester Regional Health, Attached hereto as Exhibit "**B**").

88.     Defendant failed utterly to accommodate Plaintiff as per Plaintiff's healthcare provider in Exhibit "**B**" hereto.

89.     Rather than to engage in the Required Interactive Process with Plaintiff, Defendant Dr. Kiani was instead given an ultimatum; to accept an entirely inadequate accommodation, or to be terminated from her position.

90.     When Plaintiff refused to accept the draconian terms of Defendant's ultimatum, Dr. Kiani was put on unpaid leave.

91.     It would not have been unduly burdensome for Defendant University to have accommodated Plaintiff per the requests outlined in Exhibit "**B**" hereto.

92.     Plaintiff is and has at all times relevant hereto performed her job satisfactorily and competently.

93.     Plaintiff suffers from disabilities about which Defendant is well aware, and she is thus part of a protected class.

94.     Plaintiff suffered adverse employment actions in the manner set forth hereinabove, which adverse actions were causally related to her membership in said protected class.

95.     Plaintiff suffered adverse employment actions in the manner set forth above, which actions were retaliatory in nature for reasons set forth herein-above.

96.     Defendant scornfully discriminated against Plaintiff on the basis of disability when it failed utterly to engage in the Required Interactive Process and instead affirmatively took steps to punish Plaintiff repeatedly for requesting accommodation and for complaining in the grievance and otherwise when said accommodations were repeatedly refused.

97.     In doing so, Defendant maliciously and scornfully discriminated against and retaliated against Plaintiff based upon her disabilities in an unequivocal violation of the ADA and NYSHRL.

98.     The effect of the practices complained of herein-above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee, because of her disability, and to otherwise have subjected her to emotional distress and physical and mental impairments for which emotional distress damages are justified.

99.     The unlawful employment practices complained of herein-above above were intentional.

**Count I: Disability Discrimination in Violation of Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. ("ADA"):**

100.     Defendant discriminated against Plaintiff, a disabled employee who suffered from a qualified disability when, because of Plaintiff's membership in said protected class, subjected her to adverse conditions in employment as set forth hereinabove, thus causing her pecuniary harm, emotional distress damages as well as out of pocket costs.

101.     Plaintiff was able to perform the essential functions of her job with reasonable accommodation pursuant to the Americans with Disabilities Act. Defendant violated the Americans with Disabilities Act when it failed to meaningfully engage in the Required Interactive Process and when it failed provide Plaintiff with a reasonable accommodation for her disability.

**Count II: Disability Discrimination in Violation of N.Y. Exec. Law, art. 15 and New York State Division of Human Rights Law, N.Y. Exec. L. §§ 290, et seq. ("Human Rights Law"):**

102.    Defendant discriminated against Plaintiff, a disabled employee who suffered from qualified disabilities when, because of Plaintiff's membership in said protected class, subjected her to adverse conditions in employment as set forth hereinabove, thus causing her joblessness, pecuniary harm, emotional distress damages as well as out of pocket costs.

103.    Plaintiff was able to perform the essential functions of her job with a reasonable accommodation pursuant to the NYSHRL. Defendant violated the N.Y. Exec. L. §§ 290, et seq. when it failed to meaningfully engage in the Required Interactive Process Plaintiff and when it failed to provide Plaintiff with a reasonable accommodation for her disability, thus causing her joblessness, pecuniary harm, emotional distress damages as well as out of pocket costs.

**Count III: Retaliation in Violation of Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. ("ADA"):**

104.    Defendant unlawfully retaliated against Plaintiff in violation of the ADA.

105.    Defendant retaliated against Plaintiff after Plaintiff had sought accommodations from Defendant and shortly after she complained about Defendant's refusal to accommodate her reasonable requests for accommodation such that it subjected her to adverse employment action as a punishment for complaining about said deprivation, in violation of the ADA.

106.    Defendant scornfully and intentionally retaliated against Plaintiff so egregiously as to warrant an order of punitive damages.

**Count IV: Retaliation in Violation of N.Y. Exec. Law, art. 15 and New York State Division of Human Rights Law, N.Y. Exec. L. §§ 290, et seq. ("Human Rights Law"):**

107.    Defendant unlawfully retaliated against Plaintiff in violation of the New York State Human Rights Law.

108.     Defendant retaliated against Plaintiff after Plaintiff had sought accommodations from Defendant and shortly after she complained about Defendant's refusal to accommodate her reasonable requests for accommodation such that it subjected her to adverse employment action as a punishment for complaining about said deprivation, in violation of the NYSHRL.

109.     Defendant scornfully and intentionally retaliated against Plaintiff so egregiously as to warrant an order of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating or retaliating against disabled employees, including from discriminating or retaliating against qualified individuals with a disability when seeking reasonable accommodation for said qualified disability, or perceived disability in the workplace.

B.     Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for disabled employees, and which provide equal employment opportunities for qualified individuals with a disability, which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make Plaintiff whole by providing appropriate back pay, lost wages, and lost fringe benefits, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.     Order Defendant to make whole Plaintiff by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein-

above, including but not limited to: wages, medical expenses, attorney's fees and all other out of pocket and anticipated expenses in amounts to be determined at trial.

E.      Order Defendant to make whole Plaintiff by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including the discrimination complained of herein-above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.      Order Defendant to pay punitive damages as permitted by both State and Federal law to punish Defendants for Defendants' intentional, premeditated and malignant conduct when it knowingly discriminated and retaliated against Plaintiff and when it failed to provide reasonable accommodations to Plaintiff.

G.       Grant such further relief as the Court deems necessary and proper in the public interest.

## **<u>JURY TRIAL DEMAND</u>**

Plaintiff requests a jury trial on all questions of fact raised by its complaint.

Respectfully Submitted,


<u>S:/ James D. Hartt</u>
**Bar #516129**
**JAMES D. HARTT, ESQ.**
**Attorney For Plaintiff**
**6 N. Main Street, Suite 200F**
**Fairport, NY 14450**
**Telephone: (585) 490-7100**
 **Fax: (716) 299-2006**



ORIGINAL filed this 7th Day
of October 2022 with:
The Clerk of the Federal District Court
Western District, New York