UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ISAR KIANI,

Plaintiff,

v.

Case # 22-CV-6427-FPG

DECISION AND ORDER

ST. JOHN FISHER UNIVERSITY,

Defendant.

## INTRODUCTION

Plaintiff Isar Kiani brings this action against Defendant St. John Fisher University, alleging that she suffered discriminatory and retaliatory practices on the basis of disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA") and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"). *See* ECF No. 1. Defendant moves for summary judgment on Plaintiff's claims. ECF No. 35. Plaintiff opposes the motion. ECF No. 43. For the reasons that follow, Defendant's motion for summary judgment is GRANTED.

## LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "It is the movant's burden to show that no genuine factual dispute exists, and all reasonable inferences must be drawn in the non-movant's favor." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (citations omitted). "Once a movant has made that showing, the nonmovant must set forth specific facts showing that there is a genuine issue for trial." *Bustamente v. KIND, LLC*, 100 F.4th 419, 432 (2d

Cir. 2024) (quotation marks and citation omitted). In doing so, the non-moving party may not rely on "[c]onclusory allegations, conjecture, and speculation." *Id.* (citation omitted). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted). If the Court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**BACKGROUND**

The following facts are undisputed or taken from the record except where noted. Defendant is a private university that offers four instructional modalities: (1) in-person; (2) online, which is asynchronous and utilizes an online platform; (3) hybrid, which mixes in-person and online components; and (4) remote, which is synchronous and delivered live through a video-conference platform. ECF No. 35-84 ¶¶ 1, 8–12; ECF No. 43-20 ¶¶ 1, 8–12. Tenure candidates are evaluated based on teaching, scholarship, and service through a multi-review process involving tenured members of the candidate's Department, the Department Chair, the Dean, the Rank and Tenure Committee, the Provost, the President, and the Board of Trustees. ECF No. 35-41 at 49–53.

Plaintiff joined Defendant in 2016 as an Assistant Professor in the Department of Management and Marketing in the School of Business. ECF No. 35-84 ¶ 2; ECF No. 43-20 ¶ 2. In Fall 2019, Plaintiff taught two online classes and one hybrid class, which she requested to be changed to an online class, but did not mention her disability in making this request. ECF No. 35-18 at 2–4. Dr. Nicholas Leifker, the Department Chair, denied the request stating that "all online

and hybrid" classes is "a problem." ECF No. 35-19 at 2. Dr. Leifker also stated that students complained about Plaintiff's responsiveness. ECF No. 35-18 at 2. In October 2019, Dr. Leifker again told Plaintiff that students complained about "significant quality issues" such as Plaintiff's responsiveness and tardiness. ECF No. 35-20 at 2. In November 2019, Plaintiff was notified that a student complained about receiving grades for assignments late. ECF No. 35-21 at 2.

In October 2019, Plaintiff first applied for tenure and promotion, which was denied in 2020. ECF No. 35-84 ¶¶ 24, 38; ECF No. 43-20 ¶¶ 24, 38. Dr. Kevin Railey, the Provost and Vice President of Academic Affairs, stated that while Plaintiff had "some positive recommendations," published in "quality journals," and had positive classroom observations, these positive aspects could not outweigh the negative factors, such as fourteen of twenty-two class evaluations scoring lower than the Department's average and three classes scoring "significantly lower" than the average, which indicated "potentially serious problems." ECF No. 35-42 at 2–3. However, although "[e]xcellence in teaching [was] simply not met in this case," Dr. Railey recommended that Plaintiff apply for tenure again in two years. *Id.* at 3. Dr. Gerard Rooney, the President, accepted this recommendation. ECF No. 35-84 ¶¶ 7, 38; ECF No. 43-20 ¶¶ 7, 38.

In January 2020, Plaintiff was told that MBA students complained about her responsiveness, and in May 2020, she was told that "significant" students complained about responsiveness, providing timely feedback on assignments, and faculty interaction. ECF No. 35-22 at 2; ECF No. 35-23 at 2–3. Afterwards, Plaintiff was no longer assigned to teach graduate MBA classes. ECF No. 43-20 ¶ 44.

In March 2020, all classes were transitioned to remote classes due to COVID-19. ECF No. 35-84 ¶ 41; ECF No. 43-20 ¶ 41. For Fall 2020, Defendant resumed in-person instructions with masking and social distancing requirements. ECF No. 35-84 ¶ 46; ECF No. 43-20 ¶ 46. Plaintiff,

who was to teach in-person and online classes, requested accommodation for her hearing disability as the mask requirement could limit her ability to read lips and respond to students. ECF No. 35-60 at 3; ECF No. 35-84 ¶ 47; ECF No. 43-20 ¶ 47. Human Resources proposed, and Plaintiff accepted, in-person classes where students wear clear masks. ECF No. 35-61 at 2. However, when Defendant could not secure enough clear masks, it granted Plaintiff's initial request to teach remotely. ECF No. 35-84 ¶ 52; ECF No. 43-20 ¶ 52. In September 2020, Plaintiff's request to continue teaching remotely for Spring 2021 was granted. ECF No. 35-62 at 2.

In February 2021, Dr. Leifker provided Plaintiff's 2019–2020 evaluation. ECF No. 35-26. Dr. Leifker (1) stated that three of four classes had "unacceptable" ratings, which was "rare," (2) summarized student complaints, which "seemed to multiply," and (3) addressed difficulty in reaching Plaintiff, "education quality and information flow," and the quality of Plaintiff's advice that led to "extraordinary intervention" for some students who encountered problems with graduation requirements. *Id.* at 2, 4. Dr. Leifker also noted that Plaintiff published in suspected predatory journals, which was "expressly forbidden by the AACSB" and Defendant.[1] *Id.* at 3.

Plaintiff emailed Dr. Carol Wittmeyer, the Interim Dean, to request a re-evaluation and to dispute Dr. Leifker's evaluation for containing "several errors, misstatements, and mischaracterizations that if not biased and deliberate, show severe poor judgement." ECF No. 35-28 at 2. Plaintiff stated that Dr. Leifker, *inter alia*, overlooked the fact that she published in prestigious journals and erroneously characterized others as predatory, wrongly accused her of being tardy, failed to consider the high evaluations from her undergraduate classes, and demonstrated bias against her. *Id.* at 2–11. Before issuing a written evaluation, Dr. Wittmeyer met with Plaintiff in March 2021, during which Plaintiff explained that she did not have enough

[1] Although the parties do not define what AACSB is, it seems to refer to the Association to Advance Collegiate Schools of Business.

time to respond to students during Fall 2020 because she prioritized publishing. ECF No. 35-29 at 2–3; ECF No. 35-84 ¶ 66; ECF No. 43-20 ¶ 66. Subsequently, Dr. Wittmeyer issued her evaluation that rebutted Plaintiff's contentions against Dr. Leifker's evaluation and included specific examples of the student complaints about Plaintiff's teaching. ECF No. 35-30 at 2–16.

In April 2021, Plaintiff filed a grievance about Dr. Leifker's February 2021 evaluation. ECF No. 35-11 at 4.[2] During a Zoom meeting in June 2021 for Plaintiff's annual performance evaluation, Dr. Leifker denied Plaintiff's request to record the meeting. *Id.* Defendant does not address these facts.

Defendant continued its return to in-person instructions and required wearing masks for Fall 2021. ECF No. 35-84 ¶¶ 75–76; ECF No. 43-20 ¶¶ 75–76. In August 2021, Plaintiff stated that she would be unable to read lips and understand students who would wear masks. ECF No. 35-63 at 3. Human Resources proposed that Plaintiff teach from her campus office computer and conduct office hours through Zoom meetings, which Plaintiff accepted. ECF No. 35-64 at 2–4. However, Human Resources subsequently proposed that Plaintiff teach in-person using clear masks, which Plaintiff accepted. ECF No. 35-66 at 2–3.

In October 2021, Dr. Wittmeyer told Plaintiff that no one had been in the classroom for Plaintiff's in-person Friday classes "for many, many weeks," and stated that Plaintiff should meet students, teach for 40 minutes, and then give quizzes; Plaintiff answered that she had "come to the classroom." ECF No. 35-35 at 2. In November 2021, Dr. Wittmeyer emailed faculty that in-person classes were required unless approved otherwise. ECF No. 35-15 at 2. Dr. Wittmeyer then emailed Plaintiff that it did not seem that Plaintiff was conducting in-person Friday classes. ECF No. 35-36 at 2–3. Plaintiff replied that she was following the class schedule outlined in the

[2] The Court did not receive a copy of this grievance.

syllabus, but Dr. Wittmeyer stated that the syllabus did not clarify whether Friday classes were conducted in-person and that Plaintiff conducting classes online without approval is a "continuing issue that needs to be addressed." *Id.* at 2.

Plaintiff submitted a second application for tenure and promotion, which three out of five tenured members in Plaintiff's Department recommended denying in October 2021. ECF No. 35-45 at 2–6. One member gave his "highest recommendation," stating that Plaintiff holding online Friday classes was "not incorrect or wrong or contrary to policy" and that it was undetermined whether the journals that Plaintiff published in were predatory. ECF No. 35-48 at 2. Another member stated that Plaintiff was "one of the top performers in the department in terms of research" having published in "high-quality academic journals as well as high impact practitioner focused outlets" and while Plaintiff "had some challenges from time to time," she has shown improvement and is "loved by many students." ECF No. 35-49 at 2.

However, one member voted against Plaintiff's application because although she "taught well" until her mid-probationary evaluation, Plaintiff's performance "shifted dramatically" as shown by: (1) student complaints; (2) cancelling in-person Friday classes that potentially violated the New York State Education Department's ("NYSED") requirements; (3) submitting to predatory journals, which risks Defendant losing AACSB accreditation; and (4) unwillingness to improve despite receiving feedback on these concerns. ECF No. 35-46 at 2–13. Dr. Jason Berman explained that although Plaintiff made improvements, she: (1) replaced in-person Friday classes with online quizzes, which can violate NYSED's requirements; (2) had "mixed" evaluations; and (3) submitted publications to predatory journals, which Defendant "expressly forbid[s]." ECF No. 35-47 at 2. Dr. Leifker reasoned that Plaintiff: (1) had an average of "not good" teaching evaluations; (2) was tardy and substituted in-person Friday classes for short online quizzes without

prior approval, which risked violating NYSED seat time requirements; (3) published in predatory journals; and (4) gave erroneous advice that required "extraordinary intervention." ECF No. 35-50 at 2. However, because Plaintiff had filed a grievance regarding Dr. Leifker's February 2021 evaluation, Dr. Leifker's recommendation was withheld. ECF No. 35-84 ¶ 119; ECF No. 43-20 ¶ 119.

In November 2021, Dr. Wittmeyer recommended denying Plaintiff's application due to: (1) underperforming at the graduate teaching level; (2) low student evaluations; (3) replacing in-person Friday classes with short online quizzes; (4) numerous student complaints; (5) decrease in publication quality that resulted in Plaintiff publishing in predatory journals; and (6) a lack of responsiveness, which led to an upset parent inquiry. ECF No. 35-51 at 2–12.

On December 6, 2021, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR"), alleging, *inter alia*, that because she notified Defendant about her fibromyalgia and hearing disability and filed a grievance about it, she experienced discrimination and retaliation between November 15, 2019, and December 2, 2021. ECF No. 35-10 at 2–13. Plaintiff also filed a charge with the Equal Employment Opportunity Commission ("EEOC"). ECF No. 1 ¶ 4; ECF No. 35-84 ¶ 181.[3]

In January 2022, Plaintiff submitted a complaint to Dr. Railey that contested Dr. Wittmeyer's and Dr. Leifker's recommendations, arguing that she: (1) received positive student evaluations and high course evaluations; (2) showed improvement; (3) published in quality journals that were not predatory; and (4) was physically present during her Friday classes while student took online quizzes that were not short. ECF No. 35-52 at 2–19.[4] Plaintiff also stated that

---

[3] The Court did not receive a copy of this EEOC charge.

[4] It is undisputed that the correct date of the letter is January 14, 2022. ECF No. 35-84 ¶ 126; ECF No. 43-20 ¶ 126.

she was subject to "severe discrimination" on the basis of her disability and physical condition, giving examples such as: (1) the Department Chair and Dr. Wittmeyer denying her accommodation requests; (2) Drs. Leifker, Wittmeyer, and Berman each denying Plaintiff's request to record meetings that would have accommodated her hearing disability; (3) Human Resources creating "hurdles" to her accommodation requests; (4) Dr. Leifker "rais[ing] his voice at [her] in anger," storming out of the room, and slamming the door in Fall 2019 after Plaintiff brought up her disability; and (5) Dr. Wittmeyer using "sarcasm, aggressive tone and personal attacks to silence [Plaintiff]" during several meetings. *Id.* In response, Dr. Railey and Human Resources notified Plaintiff that the allegations of disability discrimination would be investigated. ECF No. 35-53; ECF No. 35-69 at 3. In February 2022, Plaintiff was notified that the investigation concluded that her complaint was "unsubstantiated." ECF No. 35-53 at 2; ECF No. 69 at 2. In May 2022, the NYSDHR issued a determination of no probable cause for the NYSDHR complaint that Plaintiff filed. ECF No. 35-11 at 2–7; ECF No. 35-12 at 2–4.

In May 2022, the Rank and Tenure Committee unanimously recommended denying Plaintiff's tenure and promotion application, particularly due to the "ongoing concerns about instruction," Plaintiff's removal from teaching the graduate MBA program when full-time faculty is required to be able to teach both undergraduate and graduate students, and the declining quality of Plaintiff's research. ECF No. 35-54 at 2. Dr. Railey also recommended denying Plaintiff's application, despite some positive aspects that weighed in her favor, as "a significant number of factors clearly support[ed] a decision against" it. ECF No. 35-55 at 3. Dr. Rooney adopted Dr. Railey's recommendation, and the Board of Trustees unanimously denied Plaintiff's application. ECF No. 35-84 ¶¶ 145–47, 150; ECF No. 43-20 ¶¶ 145–47, 150.

In December 2021, Defendant granted Plaintiff's medical leave request from January to June 2022 "due to [her] underlying chronic medical conditions." ECF No. 35-71 at 2–4. In May 2022, Plaintiff indicated her intent to return to work and submitted a note from Dr. Saheen Thakor who stated that Plaintiff has "no contraindications" and recommended that Plaintiff be allowed to work remotely "should she need it and . . . for time off when flares occur" for her fibromyalgia. ECF No. 35-73 at 4–5. Human Resources requested clarification as the note had an "incongruency" because it stated that there were "no contraindications" but recommended specific accommodations for Plaintiff. *Id.* at 3–4. Human Resources also stated that the note was "too broad" to provide reasonable accommodations that would allow Plaintiff to perform the essential functions of her job. *Id.*

In May 2022, Plaintiff submitted Dr. Thakor's second note that stated there were "no contraindications" and recommended that Plaintiff be allowed to "work remotely should the need arise." ECF No. 35-74 at 2. Human Resources replied that this note still contained "vague and contradictory information" and requested clarification for the expected frequency and duration for Plaintiff's need to work remotely as a "regular presence on campus and the ability to provide in-person instruction is an essential function of [her] position." ECF No. 35-75 at 2. In June 2022, Plaintiff submitted Dr. Thakor's third note, which stated that fibromyalgia flares can last 1 to 2 days and occur periodically and randomly, and recommended that Plaintiff be allowed to teach remotely "on those days." ECF No. 35-76 at 2. In response, Human Resources offered remote work for a maximum of 2 days per flare and to review the status of the arrangement in the future as the unpredictability of the flares could potentially impact Plaintiff's essential functions. ECF No. 35-77 at 2.

In August 2022, Plaintiff requested that her in-person classes for Fall 2022 be changed to remote pursuant to Dr. Thakor's recommendation and stated that the proposed accommodation "unreasonably undermines the effectiveness of the 2-day maximum allowance that [Plaintiff] ha[d] been given." ECF No. 35-78 at 2–3; ECF No. 35-79 at 3. Human Resources replied that Dr. Thakor's recommendation and the teaching requirements for Plaintiff's position did not support the request for fully remote work. ECF No. 35-79 at 2.

Plaintiff submitted Dr. Thakor's fourth note that stated that fibromyalgia flares, which occur once or twice every few months, can last from 1 to 2 days to a week and that although Plaintiff is able to "come in and do her job according to the schedule she has already set" when she "is not having a flare," she should "be allowed to teach remotely when a flare occurs for the remainder of the week." ECF No. 35-80 at 2–3. Plaintiff requested a fully remote teaching schedule; otherwise, she was "unable" to send her syllabi. ECF No. 35-81 at 5–6. Human Resources asked whether Plaintiff was starting a new interactive process and requested documents that substantiated the need for fully remote work as "in-person instruction is the standard for undergraduate courses." *Id.* at 3. Plaintiff replied that she was not making a new accommodation request and that Dr. Thakor recommended that Plaintiff be able to teach remotely. *Id.* at 2. Plaintiff's request was ultimately denied, ECF No. 35-84 ¶ 174; ECF No. 43-20 ¶ 174, and Plaintiff was placed on a leave of absence from September 2022 through September 2023, when her employment was ultimately terminated. ECF No. 35-82 at 2; ECF No. 35-83 at 2.

On October 8, 2022, Plaintiff brought this action, alleging that she suffered disability discrimination and retaliation. ECF No. 1. On February 4, 2026, Defendant moved for summary judgment on Plaintiff's claims. ECF No. 35. Plaintiff opposes the motion. ECF No. 43.

## DISCUSSION

Plaintiff claims disability discrimination and retaliation in violation of the ADA and the NYSHRL. ECF No. 1 ¶¶ 100–09.[5] Defendant moves for summary judgment on all claims, arguing that: (1) parts of Plaintiff's claims are barred due to timeliness, exhaustion, and the election of remedies; (2) Plaintiff cannot establish a disability discrimination claim; (3) Defendant provided reasonable accommodations; (4) Plaintiff cannot establish a hostile work environment claim;[6] and (5) Plaintiff cannot establish a retaliation claim. ECF No. 35. The Court will discuss each argument below.

### I. Bar to Federal Court

Defendant argues that parts of Plaintiff's claims are barred under the ADA and NYSHRL due to timeliness, exhaustion, and the election of remedies. ECF No. 35-85 at 42–45. Plaintiff disagrees. ECF No. 43 at 23–24.

#### A. ADA Claims

Defendant argues that Plaintiff's ADA claims based on events that occurred on or after December 3, 2021, are barred because Plaintiff failed to exhaust her administrative remedies by not filing any subsequent administrative charges after December 6, 2021. ECF No. 35-85 at 43.

---

[5] Plaintiff does not allege any facts when discussing each cause of action, and only includes bare and conclusory elements of the law. ECF No. 1 ¶¶ 100–09. It is not this Court's obligation to "fill in the blanks" to decipher the potential and possible arguments that Plaintiff intends to raise. *Bey v. New York*, No. 11-CV-3296, 2013 WL 3282277, at *6 (E.D.N.Y. June 25, 2013); *see Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002) (declining to "scour the record" where the party failed to include any facts in the argument section). Therefore, the Court shall view Plaintiff's opposition as an amended complaint, *see Aviles v. Scully*, No. 87 Civ. 0160, 1989 WL 8667, at *4 (S.D.N.Y. Jan. 11, 1989), and draw facts alleged in the opposition to be the facts that support Plaintiff's causes of action in the complaint.

[6] Plaintiff does not assert a hostile work environment claim in her complaint. *See* ECF No. 1. However, Defendant moves for summary judgment on a hostile work environment claim, ECF No. 35 at 38–39, and Plaintiff argues in her opposition that she demonstrated this claim, ECF No. 43 at 20–22. The Court concludes that the parties impliedly consented to amending the complaint to include a hostile work environment claim and that Defendant would not be prejudiced by this amendment having had a "fair opportunity to defend" against it. *Silverstein v. Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 604 (S.D.N.Y. 2007).

Defendants also argue that Plaintiff's allegations concerning events that occurred on or before February 8, 2021, are time-barred. *Id.* Plaintiff disagrees, arguing that she timely filed her administrative charges with the NYSDHR and the EEOC, and timely commenced this action after receiving the EEOC right-to-sue letter. ECF No. 43 at 23–24.

**i. Failure to Exhaust Administrative Remedies**

In New York, failing to exhaust the administrative remedies provided by filing a charge with the EEOC or the equivalent state agency, such as the NYSDHR, will generally bar any future judicial relief. *See Herzog v. McLane Ne., Inc.*, 999 F. Supp. 274, 275 (N.D.N.Y. 1998). That said, as long as a charge is filed with the EEOC or the NYSDHR, a plaintiff has exhausted her administrative remedies. Here, there is no dispute that Plaintiff submitted an EEOC charge. However, because Plaintiff did not submit the EEOC charge itself, the Court cannot determine whether it has jurisdiction over her claims on that basis. Notwithstanding, the Court did receive the NYSDHR complaint, ECF No. 35-10 at 2–13, which also fulfills the "essential requirement to maintaining an action in federal court under the ADA[.]" *Herzog*, 999 F. Supp. at 275. Therefore, the Court will determine whether it has subject matter jurisdiction over Plaintiff's ADA claims based on the contents of the NYSDHR complaint.

Although "the claims forming the basis of [] a suit must first be presented in a complaint to the EEOC or . . . the NYSDHR" prior to the initiation of an action in federal court, "claims not raised with the EEOC (or NYSDHR) may nevertheless be pursued in federal court, provided that such claims are 'reasonably related' to those filed with the agency." *Wilson-Richardson v. Reg'l Transit Serv., Inc.*, 948 F. Supp. 2d 300, 304–05 (W.D.N.Y. 2013). In this case, the NYSDHR complaint refers to various events that occurred between November 15, 2019, and December 2, 2021. ECF No. 35-10 at 8–11. Therefore, the Court can exercise jurisdiction only over the ADA

claims involving allegations contained within the complaint and "reasonably related" claims that subsequently occurred.

"There are three types of claims which may be considered 'reasonably related' for purposes of satisfying the exhaustion requirement: (1) claims that fall within the scope of the administrative agency's investigation which can reasonably be expected to grow out of the charge of discrimination; (2) claims that allege retaliation for filing an administrative charge; and (3) claims that allege further incidents of discrimination carried out in the same manner alleged in the administrative charge.'" *Wilson-Richardson*, 948 F. Supp. 2d at 305 (quotation marks and brackets omitted) (quoting *Carter v. New Venture Gear, Inc.*, 310 F. App'x 454, 455 (2d Cir. 2009)). Here, Plaintiff's ADA claims fall under the second exception as Plaintiff alleges that she was retaliated against "shortly after she complained about Defendant's refusal to accommodate her reasonable requests for accommodation." ECF No. 1 ¶ 105; *see* ECF No. 43 at 22–23. Therefore, the ADA claims based on events that occurred after December 6, 2021, are not exhausted.

**ii. Time-Bar**

The Court next determines whether Plaintiff's ADA claims connected to events that occurred on or before February 8, 2021, are time-barred. "In New York, a federal employment discrimination claim is time-barred unless the plaintiff first files an EEOC or NYSDHR administrative charge within 300 days of the alleged discrimination." *Dossous v. New York City Health & Hosps. Corp.*, No. 19-CV-3098, 2023 WL 4305021, at *6 (E.D.N.Y. June 30, 2023) (citation omitted). "Where a plaintiff alleges discrete discriminatory or retaliatory acts, such claims are not actionable if they occurred prior to the 300-day period even though they may be 'related to' acts that occurred within the permissible 300-day period." *Basso v. Willow Run Foods, Inc.*, 577 F. Supp. 3d 73, 80 (N.D.N.Y. 2022) (quotation marks and citation omitted).

Disability discrimination, failure to accommodate, and retaliation claims are considered discrete acts that must be filed each time an unlawful act occurs. *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 444–46 (S.D.N.Y. 2023) (discrimination and retaliation); *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134–35 (2d Cir. 2003) (failure to accommodate). Here, Plaintiff filed an NYSDHR complaint on December 6, 2021. ECF No. 35-10 at 13. Consequently, Plaintiff's ADA claims of disability discrimination, failure to accommodate, and retaliation that occurred on or before February 8, 2021, fall outside the 300-day window and are thus time-barred. *See Kornmann v. City of New York Bus. Integrity Comm'n*, 467 F. Supp. 3d 54, 61 (E.D.N.Y. 2020) (claims that occurred more than 300 days before filing an EEOC charge were not exhausted).

However, the 300-day limitation does not apply to hostile work environment claims "as long as any act contributing to the hostile work environment claim falls within the 300-day period." *Zhou v. Roswell Park Cancer Inst. Corp.*, No. 19-CV-1200, 2021 WL 4272286, at *2 (W.D.N.Y. Sept. 21, 2021) (quotation marks and citation omitted). In such instances, courts may consider "the entire time period of the hostile environment" to determine liability. *Id.* In her NYSDHR complaint, Plaintiff alleges that she was harassed and intimidated based on her disability. ECF No. 35-10 at 6, 8–10. The NYSDHR complaint thus includes claims of harassment and intimidation that "fall[] within the 300-day period." *Zhou*, 2021 WL 4272286, at *2. Therefore, the 300-day limitation does not apply to the hostile work environment claim that Plaintiff alleges. *Id.* This allows the Court to consider "the entire time period of the hostile environment," including the period before February 8, 2021. *Id.* Accordingly, to the extent that Defendant argues that the 300-day limitation applies to Plaintiff's hostile work environment claim, that claim is dismissed.

For the reasons above, Plaintiff's ADA claims of disability discrimination, failure to accommodate, and retaliation relating to events that occurred on or before February 8, 2021, are dismissed as time-barred.

**B. NYSHRL Claims**

Defendant argues that Plaintiff's claims contained in the NYSDHR complaint are barred under the NYSHRL's election of remedies provision. ECF No. 35-85 at 44. Plaintiff disagrees, arguing that she timely filed the administrative charge. ECF No. 43 at 23–24. The Court agrees with Defendant.

A person may elect to bring a NYSHRL claim before the NYSDHR or a court. *See* N.Y. Exec. Law § 297(9). If the person chooses the former, unless certain exceptions apply, *id.*, she may not bring the claim "again as a plenary action in another court," *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002). Here, Plaintiff does not even argue that this Court may consider the same claims that the NYSDHR already adjudicated. Indeed, none of the exceptions to the NYSHRL's election-to-remedies provision apply in this instance. *See* N.Y. Exec. Law § 297(9) (exceptions include "where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division"). Therefore, the Court lacks jurisdiction over Plaintiff's NYSHRL claims that are contained in her NYSDHR complaint. *See Desardouin v. City of Rochester*, 708 F.3d 102, 106 (2d Cir. 2013) (barring an NYSHRL claim on the basis of election of remedies where the claims had been filed with a local commission on human rights and the exceptions under N.Y. Exec. Law § 297(9) did not apply).

Accordingly, Plaintiff's NYSHRL claims concerning events that allegedly occurred between November 15, 2019, and December 2, 2021, as contained in her NYSDHR complaint are dismissed.

## II. Disability Discrimination Claim

"Title I of the ADA prohibits employers from discriminating again[st] any 'qualified individual with a disability because of the disability of such individual' in regard to any aspect of employment." *Dansler-Hill v. Rochester Inst. Of Tech.*, 764 F. Supp. 2d 577, 582 (W.D.N.Y. 2011) (quoting 42 U.S.C. § 12112(a)). Discrimination claims may be brought under a failure to provide reasonable accommodation or adverse employment action theory. *See McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013). Here, Plaintiff alleges both. ECF No. 1 ¶¶ 100–04.

"Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *McMillan*, 711 F.3d at 125; *see Montaldo v. Cnty. of Suffolk*, No. 21-CV-1272, 2026 WL 878242, at *3 (E.D.N.Y. Mar. 31, 2026) ("The burden-shifting framework also applies to disability discrimination claims under the NYSHRL[.]") (citation omitted).

### A. Failure to Accommodate Claim

Plaintiff argues that Defendant discriminated against her by: (1) failing to meaningfully engage in an interactive accommodation process, (2) requiring "repeated clarification despite medical documentation," and (3) failing to provide adequate or reasonable accommodation for her disability. ECF No. 1 ¶¶ 101, 103; ECF No. 43 at 19–20. Defendant moves for summary judgment, arguing that it provided or offered reasonable accommodation that Plaintiff accepted or unreasonably rejected. ECF No. 35 at 34–36. The Court will analyze each argument in turn.

As an initial matter, Plaintiff does not specify when she was denied reasonable accommodation in the complaint. However, in her opposition, Plaintiff describes how Defendant "required repeated clarification despite medical documentation" before "ultimately g[iving] Plaintiff an inadequate accommodation choice or termination." ECF No. 43 at 19–20. From this, the Court infers that Plaintiff's failure to accommodate claim is based on the events that took place between May and August 2022 when Plaintiff requested fully remote work and Defendant offered remote work for a maximum of 2 days whenever Plaintiff's fibromyalgia flares.[7]

Disability discrimination under the ADA may arise when an employer fails to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability . . ., unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business." 42 U.S.C. § 12112(b)(5)(A); *see Berger v. N.Y.C. Police Dep't*, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018) (same under the NYSHRL). "To maintain a *prima facie* claim under the ADA and the NYSHRL for failure to accommodate, an employee must show that: (1) [she] is a person with a disability under the meaning of the ADA or the NYSHRL; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, the employee could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Berger*, 304

[7] Because Plaintiff's arguments only refer to Defendant's alleged failure to consider Dr. Thakor's recommendation about accommodating Plaintiff's fibromyalgia, ECF No. 43 at 19–20, whether Defendant provided reasonable accommodations for her hearing disability is not at issue. In any event, the record shows that Defendant provided accommodations for Plaintiff's hearing impairment and Plaintiff accepted. *See* ECF No. 35-61; ECF No. 35-62 at 2; ECF No. 35-64 at 2–4; ECF No. 35-66. To the extent that Plaintiff tries to hold Defendant accountable by alleging that those accommodations were inadequate, her arguments fail as she had accepted the accommodations without complaint at the time. *See Elmessaoudi v. Mark 2 Rest. LLC*, No. 14-CV-4560, 2016 WL 4992582, at *8 (S.D.N.Y. Sept. 15, 2016) (stating that the plaintiff cannot complain that the accommodation, which he accepted, is inadequate because if the accommodation was insufficient, the plaintiff should have continued engaging in the interactive process). Therefore, the Court shall only consider whether Defendant failed to reasonably accommodate Plaintiff's accommodation request made between May and August 2022.

F. Supp. 3d at 368–69 (internal quotation marks and brackets omitted) (quoting *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015)).

Here, Plaintiff cannot satisfy the fourth element that Defendant has refused to make reasonable accommodations. Ordinarily, "[t]he reasonableness of an employer's accommodation is a 'fact-specific' question that often must be resolved by a factfinder." *Noll*, 787 F.3d at 94. However, where:

> the employer has already taken (or offered) measures to accommodate the disability, the employer is entitled to summary judgment if, on the undisputed record, the existing accommodation is "plainly reasonable." *Id.* In other words, the plain reasonableness of the existing accommodation ends the analysis. There is no need to engage in further burden-shifting to consider whether the employee's requested accommodation would have been reasonable.

*Id.*

Here, Defendant has offered measures to accommodate Plaintiff's fibromyalgia after engaging in an interactive accommodation process with Plaintiff between May and August 2022. Specifically, the record shows that Human Resources offered to allow Plaintiff to work remotely for a maximum of 2 days per fibromyalgia flare. ECF No. 35-73 at 3–4; ECF No. 35-75 at 2; ECF No. 35-77 at 2. Because Defendant offered measures to accommodate Plaintiff's disability, the question turns to whether this accommodation was "plainly reasonable." *Noll*, 787 F.3d at 94.

The Court concludes that Defendant's proposed accommodation was plainly reasonable. Dr. Thakor consistently recommended that Plaintiff be allowed to work remotely "should [Plaintiff] need it and allow[ed] for time off when flares occur." ECF No. 35-73 at 4–5; ECF No. 35-74 at 2. In her third note, Dr. Thakor recommended that Plaintiff be able to teach remotely when her fibromyalgia flares, which can last 1 to 2 days. ECF No. 35-76 at 2. In response, Defendant offered to grant Plaintiff remote work for a maximum of 2 days per flare. ECF No. 35-

77 at 2. This accommodation is not "so inadequate that it deters [Plaintiff] from attempting to access the services otherwise available to [her]." *Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 73 (2d Cir. 2016). Rather, the accommodation is specific and particular to accommodate Plaintiff's disability as recommended by Dr. Thakor. Therefore, Defendant's proposed accommodation was plainly reasonable. Accordingly, no genuine dispute of material fact exists as to whether Defendant refused to make reasonable accommodations. *See* Fed. R. Civ. P. 56(a).

Plaintiff also claims that Defendant failed to meaningfully engage in the interactive process by making the process "prolonged and inefficient" by "requir[ing] repeated clarification despite medical documentation." ECF No. 43 at 19–20. Yet, requesting clarification that would allow the employer to better accommodate the employee's disability does not render the employer's judgment to be "unreasonable or implausible." *Evarts v. Quinnipiac Univ.*, No. 15-CV-1509, 2018 WL 4845743, at *21, 23 (D. Conn. Oct. 4, 2018) (plaintiff's disagreement with taking additional measures to explore the parameters of the medical provider's recommendation, which contained conflicting and vague notes, did not render the employer's judgment unreasonable or implausible). This is especially true here where the medical note contained conflicting information by stating that there were "no contraindications" but recommended specific accommodations for Plaintiff. ECF No. 35-73 at 4–5; ECF No. 35-74 at 2. Therefore, Plaintiff failed to show a genuine dispute of material facts that Defendant did not to meaningfully engage in the interactive process. *See Bustamente*, 100 F.4th at 432.

In fact, the record shows that Plaintiff caused any breakdown of the interactive process. Two months after Defendant offered accommodation for her fibromyalgia, Plaintiff presented Dr. Thakor's fourth note and requested fully remote work. ECF No. 35-80 at 2–3.[8] When asked

[8] It is noted that Dr. Thakor's fourth note did not actually recommend fully remote work, but for Plaintiff to be allowed to teach remotely when flares occur. ECF No. 35-80.

whether she was trying to re-start another interactive process, which would require documents to substantiate her request, Plaintiff stated that she was not making a new request and merely repeated her request to teach fully remote. ECF No. 35-81 at 2–3. Therefore, it was Plaintiff who declined to accept the proposed accommodation or to start a new process by providing medical documents that would substantiate her request. In such instance, Plaintiff cannot establish a failure to accommodate claim. *See Guerrero v. Constellation Health Servs., LLC*, No. 22-CV-07736, 2025 WL 2549936, at *11 (E.D.N.Y. Sept. 4, 2025) ("[A]n employee who is responsible for a breakdown of the interactive process may not recover for a failure to accommodate." (brackets omitted) (quoting *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 946 (2d Cir. 2008)).

Because no rational jury could find that Defendant failed to provide reasonable accommodations, Defendant is entitled to summary judgment on Plaintiff's failure to accommodate claim. *See Scott,* 550 U.S. at 380.

**B. Adverse Action Claim**

Plaintiff alleges that Defendant discriminated against Plaintiff, who suffers from qualified disabilities, when it subjected her to adverse conditions in employment due to Plaintiff's membership in a protected class. ECF No. 1 ¶¶ 100–03. Defendant moves for summary judgment on Plaintiff's claim of disability discrimination, arguing that Plaintiff cannot establish a *prima facie* case that she was discriminated because of her disabilities. ECF No. 35-85 at 23–33. Plaintiff disagrees, arguing that she was subject to adverse actions due to her disabilities and requests for accommodation. ECF No. 43 at 16.

In accordance with the *McDonnell Douglas* framework, to proceed on an adverse employment action theory, a plaintiff must allege that "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3)

she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (per curiam); *see Slater v. NYU Langone Health Sys.*, No. 24-CV-03711, 2025 WL 2208292, at *15–16 (E.D.N.Y. Aug. 4, 2025) (once plaintiff's disability is undisputed, "the analysis of the NYSHRL and ADA disability discrimination claims is the same").

Once a plaintiff establishes a *prima facie* case of discrimination, "a presumption arises that more likely than not the adverse conduct was based on the consideration of impermissible factors and the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the disparate treatment." *Kleyman v. SUNY Downstate Med. Ctr.*, No. 18-CV-3137, 2020 WL 5645218, at *14 (E.D.N.Y. Sept. 21, 2020) (quotation marks and citation omitted). "If the employer offers such a legitimate reason, the burden shifts back to the plaintiff to prove that the employer's reason was in fact pretext for discrimination." *Id.* (quotation marks and citation omitted). "The plaintiff must then put forth adequate evidence to support a rational finding that the reasons proffered by the employer were false, and that more likely than not the employee's protected characteristic was the real reason for the discharge." *Id.* (citation omitted). "Ultimately, the burden of persuading the trier of fact as to intentional discrimination remains with the plaintiff. At the summary judgment stage, she must show that the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." *Id.* (brackets and citation omitted).

Plaintiff claims that she was subject to adverse employment actions due to her disability and accommodation requests. However, Plaintiff only presents bare and conclusory arguments that she experienced adverse action due to her disability and provides no evidence of such. ECF

No. 1 ¶¶ 100, 102; ECF No. 43 at 16. In fact, Plaintiff admits that Defendant's administrators did not explicitly discuss Plaintiff's disability when providing her with negative evaluations or denying Plaintiff's tenure and promotion application. *See* ECF No. 43-20 ¶¶ 63, 70, 74, 112, 124, 134, 142, 151. Instead, when elaborating on her discrimination claims, Plaintiff focuses on how the adverse actions occurred due to her accommodation requests. ECF No. 43 at 16–17. Similarly, when asked during her deposition whether Plaintiff believed that she was discriminated against based on her disability or request for accommodation, Plaintiff only answered that she was discriminated against due to her accommodation requests. *See, e.g.*, ECF No. 35-2 at 49–50. However, experiencing adverse actions due to requesting accommodation is insufficient to establish causation that is required to make a *prima facie* claim. *See Fiore v. N. Shore Radiation Therapy*, No. 24-CV-3164, 2026 WL 1469451, at *6 (E.D.N.Y. May 26, 2026) (holding that plaintiff failed to allege disability discrimination because she only alleged that defendants' failure to accommodate led to her termination, not because they harbored an animus towards her disability itself); *Brady v. Dammer*, 574 F. Supp. 2d 712, 721 (N.D.N.Y. 2008). Therefore, Plaintiff fails to establish that she was subjected to adverse conditions in employment because of her disabilities. Accordingly, Plaintiff cannot establish a *prima facie* claim of disability discrimination under the theory of adverse employment.[9]

[9] A failure to accommodate may be an element of a discrimination claim under the theory of adverse employment in addition to forming an independent cause of action. *See Kleyman*, 2020 WL 5645218, at *12; *Ugactz v. United Parcel Serv., Inc.*, No. 10-CV-1247, 2013 WL 1232355, at *7 (E.D.N.Y. Mar. 26, 2013) ("The Second Circuit has 'ruled that failure to make reasonable accommodation, when the employee has satisfied the first three elements of [her *prima facie*] claim, amounts to discharge because of [her] disability.'" (*quoting Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000))). Plaintiff does not expressly make an adverse employment action claim based on failure to accommodate. However, she does allege that Defendant discriminated against her when it failed to provide Plaintiff with reasonable accommodation for her disability. ECF No. 1 ¶¶ 101, 103. Yet, as discussed above, Defendant provided or offered to provide reasonable accommodations for Plaintiff's disabilities. In other words, there was no failure to accommodate in this case. Therefore, even if Plaintiff were seeking an adverse employment action claim based on failure to accommodate, her claim would have been unsuccessful.

For the reasons above, Defendant is entitled to summary judgment on Plaintiff's disability discrimination claim. *See Dupree v. Younger*, 598 U.S. 729, 737 (2023) ("Rule 56 thus contemplates that the court will sometimes deny the motion because the facts are genuinely in dispute and other times because the law does not support the movant's position.").

**C. Hostile Work Environment Claim**

Defendant moves for summary judgment on Plaintiff's hostile work environment claim as Plaintiff failed to identify conduct that "permeated with discriminatory intimidation, ridicule, and insult." ECF No. 35-85 at 38–39. Plaintiff argues that she sufficiently demonstrated a hostile work environment claim under the ADA by showing that she was subject to harassment and scrutiny due to her disabilities and accommodation requests. ECF No. 43 at 20–22.

"To prevail on a hostile work environment claim under the ADA, a plaintiff must show (1) that the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 245 (S.D.N.Y. 2025) (quotation marks and brackets omitted) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)). "To be deemed pervasive, discriminatory incidents must be more than episodic; they must be sufficiently continuous and concerted." *Talbott-Serrano v. Iona Coll.*, No. 21-CV-1055, 2022 WL 3718346, at *15 (S.D.N.Y. Aug. 29, 2022) (quotation marks and citation omitted). "Furthermore, a plaintiff must demonstrate that the conduct occurred 'because of' the plaintiff's protected status and that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Id.* (quotation marks and citation omitted).

As an initial matter, the Court dismisses any claims of hostile work environment that allegedly resulted from Plaintiff's accommodation requests because making an accommodation

request itself is not a protected membership or characteristic. *Id.* The Court thus turns to whether Plaintiff was subjected to a hostile work environment due to her disability.

To support her claim, Plaintiff largely argues that Defendants exhibited two types of adverse behavior: (1) heightened scrutiny and negative evaluations, and (2) humiliating and hostile interactions. First, Plaintiff alleges that she was subject to heightened scrutiny and negative job evaluations, such as Defendant relying upon prior performance criticisms, scrutinizing Plaintiff's tardiness and attendance, making uninvited classroom visits, and criticizing Plaintiff's modality of conducting Friday classes with online quizzes. ECF No. 43 at 21. However, "[a]llegations of negative job evaluations or excessive reprimands are insufficient to establish a hostile environment claim." *Salerno v. Town of Bedford, NY*, No. 05 CIV. 7293, 2008 WL 5101185, at *8 (S.D.N.Y. Dec. 3, 2008) (citation omitted); *see Hong Yin v. N. Shore LIJ Health Sys.*, 20 F. Supp. 3d 359, 371 (E.D.N.Y. 2014) (claims of receiving higher scrutiny, negative feedback, and overt criticism were vague and insufficient as a matter of law to support a hostile work environment claim). The record also shows that Plaintiff received negative performance evaluations before disclosing her disabilities, and Plaintiff admits that Defendant's administrators did not explicitly discuss her disability when providing her with negative evaluations. *See* ECF No. 43-20 ¶¶ 63, 70, 74, 112, 124, 134, 142, 151. Plaintiff thus fails to establish "the requisite causation" between her disability and the negative evaluations. *Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 525 (E.D.N.Y. 2019).

Second, Plaintiff alleges that she experienced humiliating and hostile interactions with administrators after disclosing her disabilities (1) when Plaintiff reminded Dr. Leifker of her condition in November 2019 to which Dr. Leifker "rose in anger," exclaimed "How should I know anything about this? I'm not an expert in medicine," immediately left, and slammed the door; (2)

around January 2020 when Dr. Wittmeyer expressed displeasure at granting Plaintiff the accommodation to teach remotely; and (3) in October 2021 when Plaintiff reminded Dr. Wittmeyer of her disabilities upon receiving criticism of her teaching modalities to which Dr. Wittmeyer showed "disdainful skeptical contempt," which left Plaintiff in tears. ECF No. 1 ¶¶ 17, 20–21, 59–63; ECF No. 43 at 21. Plaintiff offers no evidence to support these allegations. In any event, the three instances occurred over the span of two years, which is insufficient to establish a pervasive hostile work environment. *See Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 407 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 739 (2d Cir. 2014) (two discriminatory comments were not sufficiently severe to alter the plaintiff's terms and conditions of employment).

Accordingly, Defendant's summary judgment motion is granted regarding Plaintiff's hostile work environment claim. *See Dupree*, 598 U.S. at 737.

## III. Retaliation Claim

Plaintiff argues that after she requested accommodation and submitted complaints, Defendant retaliated against her. ECF No. 1 ¶¶ 104–09.[10] Defendant moves for summary judgment, arguing that Plaintiff cannot establish causation or pretext. ECF No. 35-85 at 39–42.

"The burden-shifting framework under *McDonnell Douglas* also applies to retaliation claims under both the ADA and the NYSHRL." *Tafolla v. Heilig*, 80 F.4th 111, 118, 125 (citation omitted). "The elements of a *prima facie* case of retaliation under both statutes are: (i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Id.* (quotation marks and citations omitted).

[10] Although Plaintiff's disability discrimination claims have been dismissed, this does not preclude her from claiming retaliation. *See Levy v. New York State Dep't of Env't Conservation*, 297 F. Supp. 3d 297, 322 n.32 (N.D.N.Y. 2018).

Initially, requesting accommodation is not a protected activity under the NYSHRL. *See Keneston v. New York State Off. of the State Comptroller*, No. 24-CV-0136, 2026 WL 1480354, at *23 (N.D.N.Y. May 27, 2026). Therefore, Plaintiff's retaliation claim regarding her request for accommodation under the NYSHRL is dismissed.

Turning to Plaintiff's *prima facie* claim, the Court concludes that Plaintiff established the first three prongs. First, Plaintiff established that she was involved in protected activities by (1) requesting accommodation "in the ADA context," *Medina v. AAM 15 Mgmt. LLC*, 750 F. Supp. 3d 332, 348 (S.D.N.Y. 2024); (2) filing an NYSDHR complaint, *see Keneston*, 2026 WL 1480354, at *23; and (3) filing a grievance about Dr. Leifker's February 2021 evaluation and a complaint to Dr. Railey in January 2022, *see Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002). Second, Plaintiff established Defendant's awareness as Defendant acknowledges that Plaintiff requested accommodation, filed the NYSDHR complaint, filed a grievance about Dr. Leifker's evaluation, and filed a complaint to Dr. Railey. ECF No. 35-84 ¶¶ 48–49, 54, 79, 83, 88, 119, 127, 154–170, 177. Third, Plaintiff established that she was subjected to "materially adverse change[s] in the terms, privileges, duration and conditions of employment," by arguing that she received negative performance evaluations, was denied tenure, denied accommodations, placed on unpaid leave, and eventually terminated. *Treglia*, 313 F.3d at 720 (adverse action includes "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand"); *see also Kirkland-Hudson*, 665 F. Supp. 3d at 460 (adverse action can include denials of accommodations in the retaliation context).[11]

[11] To the extent Plaintiff purports to argue that Defendant's accommodations that were provided prior to May 2022 are adverse employment actions, ECF No. 43 at 19–20, the claims are dismissed. As discussed, *supra*, Defendant had not "denied" Plaintiff's requests prior to May 2022. Rather, Defendant provided accommodation that Plaintiff accepted. Additionally, these accommodations were plainly reasonable in light of Plaintiff's communicated disabilities and did not materially or adversely change the terms and conditions of Plaintiff's employment. *See Treglia*, 313 F.3d at 720. Therefore, in regard to Plaintiff's retaliation claim, the Court will only consider the interactive accommodation process that took place between May and August 2022.

The Court thus turns to the final element: causation. "With respect to causation, a plaintiff must prove that 'but for' the disability, the adverse action would not have been taken." *Tafolla*, 80 F.4th at 125 (quotation marks and citation omitted). "Proof of causation can be established either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id.* (quotation marks, ellipsis, and citation omitted). "A plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action." *Id.* at 125–26 (citation omitted).

Here, Plaintiff cannot establish a direct causal connection. Plaintiff argues that she has presented sufficient evidence that shows how Defendant's discriminatory animus and hostility caused the employment actions. ECF No. 43 at 17–18. Yet, she offers nothing in support other than her own conclusory statements. *See Bustamente*, 100 F.4th at 432. In fact, Plaintiff concedes that the administrators did not explicitly discuss her disability or protected activities when taking adverse actions. *See* ECF No. 43-20 ¶¶ 63, 70, 74, 112, 124, 134, 142, 151. Therefore, in order to successfully make a *prima facie* case, Plaintiff must establish an indirect causal connection.

To establish indirect causation, Plaintiff relies on temporal proximity by stating that the retaliation occurred "shortly after" she engaged in her protected activities. ECF No. 1 ¶¶ 150, 108. However, the record does not substantiate Plaintiff's claim. First, the record shows that Plaintiff consistently received negative performance evaluations and complaints about her teaching from as early as 2019 and January 2020. This adverse action precedes Plaintiff's first accommodation request that was made in July 2020 or filing of a grievance or complaint that occurred in April 2021. Additionally, the record is replete with evidence that throughout her employment, Plaintiff

continued to receive negative evaluations, critiques, and student complaints. An abundance of evidence also shows that Plaintiff consistently received warnings about her teaching methods, timeliness, responsiveness, replacing in-person Friday classes with online quizzes that potentially violated the NYSED requirements, and publishing in suspected predatory journals that jeopardized Defendant losing AACSB accreditation. Because the evidence shows that the adverse action occurred before any protected activities and that negative evaluations and complaints continued throughout her employment, Plaintiff fails to establish causation between the negative performance evaluations and the adverse actions. *See Slattery v. Swiss Reinsurance America Corp.*, 245 F.3d 87, 93 (2d Cir. 2001); *Europe v. Equinox Holdings, Inc.*, No. 20-CV-7787, 2022 WL 4124763, at *10 (S.D.N.Y. Sept. 9, 2022) ("[W]here discipline began before an employee's protected activity and the employee's poor performance continued after the protected activity, the continuation and even gradual escalation of discipline cannot support a retaliation claim.").

In this regard, Plaintiff's termination was the "ultimate product of an extensive period of progressive discipline which began prior to the protected activity." *McCullough v. Fed. Express Corp.*, No. 20-CV-00170, 2023 WL 3044811, at *11 (D. Vt. Apr. 21, 2023) (internal quotation marks omitted) (quoting *Slattery*, 245 F.3d at 96). Therefore, no inference of retaliation may be found concerning Plaintiff's termination. In any event, the termination occurred in September 2023 at the earliest. This adverse action is too temporally remote from Plaintiff's last protected activity of requesting accommodation in August 2022 to establish causation. *See Perry v. NYSARC, Inc.*, 424 F. App'x 23, 26 (2d Cir. 2011) (eleven-month gap is too remote). Therefore, Plaintiff fails to show that she was terminated because of her protected activity.

Finally, Plaintiff argues that Defendant retaliated against her by denying her request for fully remote work and placing her on unpaid leave. ECF No. 43 at 16. Yet, the record shows that

Defendant denied Plaintiff's accommodation request due to its policy, which prioritizes in-person instructions that are required for the essential functions of Plaintiff's job, and the fact that Plaintiff could not provide medical documents that supported her request for fully remote work. Therefore, Plaintiff did not establish that "but for" her accommodation request, Defendant would not have denied accommodation. *Tafolla*, 80 F.4th at 125. Similarly, placing Plaintiff on leave was a natural consequence of her refusal to accept Defendant's proposed accommodation and to send her syllabi for the following semester—nothing in the record indicates that the leave of absence was motivated by a retaliatory animus for making an accommodation request. *Id.* Plaintiff thus fails to adduce evidence showing a causal connection between her protected activity of requesting accommodation and the adverse actions.[12]

Because no reasonable jury could believe that Plaintiff would not have been retaliated against but for her protected activities, Defendant's summary judgment motion is granted regarding Plaintiff's retaliation claim. *See Scott,* 550 U.S. at 380.

[12] In any event, Plaintiff's retaliation claims fail because she cannot show pretext. Defendant argues that Plaintiff received negative evaluations, was denied tenure and promotion, and was terminated because multiple independent reviewers identified year-long performance deficiencies. ECF No. 46 at 9–10. Defendant therefore met its shifted burden under *McDonnell Douglas* by providing a legitimate and non-retaliatory reason. *See Kleyman*, 2020 WL 5645218, at *14. In response, Plaintiff argues that she received positive evaluations and disputes Defendant's evidence that indicates otherwise. ECF No. 43. However, even a "positive performance evaluation" does not establish that an employer's action was pretext where the employer "provided evidence showing that [the employee] had numerous job performance issues." *Mavrommatis v. Carey Limousine Westchester, Inc.*, 476 F. App'x 462, 466 (2d Cir. 2011). Having failed to meet the shifted burden to show pretext, Plaintiff's retaliation claim regarding the negative performance evaluations, the denial of tenure and promotion, and eventual termination would have thus failed.
Defendant also provided a legitimate and non-retaliatory reason for denying Plaintiff's request for fully remote work, stating that it was "expressly tied to provider guidance and essential job requirements." ECF No. 35-85 at 41. This is supported by the record where Defendant repeatedly emphasized that in-person instructions were an essential part of Plaintiff's job. Plaintiff, however, failed to address this argument, let alone argue that this reason was pretext for retaliation. *See Kleyman*, 2020 WL 5645218, at *14. Having failed to meet her burden, Plaintiff's retaliation claim regarding the denial of her accommodation request and placing her on a leave of absence fails. *See Thomas v. Bridgeport Bd. of Educ.*, No. 20-CV-1487, 2022 WL 3646175, at *1, 3–4 (D. Conn. Aug. 24, 2022) (granting summary judgment partly because "in-person teaching did not cease to be an essential function" of plaintiff's job as a teacher and was only temporarily paused during COVID-19).

## CONCLUSION

For these reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 1, 2026
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York